# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| RALPH E. WHITE,<br><br>    Plaintiff,<br><br>v.<br><br>PROCESS EQUIPMENT AND CONTROLS, LLC,<br><br>    Defendant. | CIVIL ACTION NO.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

COMES NOW Plaintiff Ralph E. White, by and through the undersigned counsel, and files this Complaint against Process Equipment and Controls, LLC ("PEC" or "Defendant"), and shows the following:

## NATURE OF ACTION

1. Plaintiff brings this Action to seek relief for violations of the Americans with Disabilities Act, as amended by the ADA Amendments Act of 2008, 42 U.S.C § 12101 *et seq.* ("ADA").

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over Plaintiff's claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under Federal law.

3. Venue is proper in this Court pursuant to 42 U.S.C. § 12117(a), 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. § 1391(b)(1) and (2) because (1) Defendant resides

within this judicial district and (2) the unlawful conduct giving rise to this action was committed within this judicial district.

## ADMINISTRATIVE PROCEEDINGS

4. Plaintiff has timely and fully complied with all prerequisites for administrative exhaustion, and thus all conditions precedent to the filing of this action have been satisfied.

5. On July 24, 2019, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). See EEOC Charge No. 410-2019-04809, attached as **Exhibit A**.

6. Plaintiff filed the Charge within 180 days of the discriminatory acts of which he complains.

7. The EEOC issued a Notice of Right to Sue dated May 27, 2020. See Notice of Right to Sue, attached as **Exhibit B**. This action is being filed within ninety (90) days of Plaintiff's receipt of said Notice of Right to Sue.

## PARTIES

8. Plaintiff is a U.S. Citizen and a resident of the State of Georgia.

9. Plaintiff is an individual with a disability as that term is defined by 42 U.S.C. § 12102(1)(A), (B) and (C).

10. Plaintiff suffers from a physical or mental impairment that substantially limits one or more major life activities, has a record of such an impairment, and was regarded by PEC as having such an impairment.

11. Plaintiff suffers from epilepsy.

12. Epilepsy is a physical or mental impairment that "substantially limits neurological function" and other major life activities. See 29 C.F.R. § 1630.2(j)(3)(iii).

13. Plaintiff was a "qualified employee" as that term is defined under 42 U.S.C. § 12111(8).

14. Plaintiff could perform the essential functions of his job at PEC with or without a reasonable accommodation.

15. On April 15, 2019, Plaintiff had two epileptic seizures, including one seizure at work and one seizure at the emergency room ("ER") at Southern Regional Medical Center.

16. On April 16, 2019, when Plaintiff was discharged from the ER, he requested a few days off work to recover from the seizures and the effects of the medication he had received in the ER.

17. Other than requesting a few days off work on April 16, 2019, Plaintiff did not need an accommodation to perform the essential functions of his job at PEC.

18. PEC is a Georgia corporation with its principal place of business at 10439 Old Atlanta Highway, Covington, Georgia 30014.

19. PEC may be served with process by delivering a copy of the Summons and Complaint to its registered agent, Owner and President Ryan Loew, at 150 Rose Creek Drive, Covington, Georgia 30014.

20. At all relevant times, PEC was an "employer" as that term is defined by 42 U.S.C. § 12111(5)(A).

21. At all relevant times, PEC engaged in equipment manufacturing and maintenance in multiple states, which affects commerce, and had more than 15 employees each working day in each of 20 or more calendar weeks in 2017, 2018, and 2019.

## **FACTS**

22. Plaintiff suffers from epilepsy and has a history of epileptic seizures.

23. Plaintiff's epileptic seizures were completely controlled by medication from 2011 until April 15, 2019, when Plaintiff suffered two epileptic seizures due to a mix-up with his medication.

24. On December 21, 2018, Plaintiff completed an application for employment at PEC.

25. The employment application included a health questionnaire that required Plaintiff to disclose whether he had epilepsy or a history of epilepsy (and other

disabilities such as diabetes, cerebral palsy, multiple sclerosis, Parkinson's disease, etc.).

26. PEC's decision to hire Plaintiff was contingent on the results of a pre-employment drug test.

27. PEC'S decision to hire Plaintiff was contingent on the result of a background check.

28. PEC'S decision to hire Plaintiff was contingent on PEC's verification of the information in Plaintiff's employment application.

29. PEC's decision to hire Plaintiff was contingent on Plaintiff's eligibility to work in the United States.

30. On December 26, 2018, Plaintiff started working at PEC as a Welder.

31. Throughout Plaintiff's employment at PEC, Plaintiff was never written up for poor performance.

32. Around April 4, 2019, Plaintiff was promoted to Foreman. As a Foreman, Plaintiff managed other employees who performed the welding work.

33. On April 15, 2019, at approximately 10:30 p.m., Plaintiff had an epileptic seizure while at work.

34. Plaintiff was taken via ambulance to the ER, where he suffered a second epileptic seizure.

35. Plaintiff was treated with Atvian (a benzodiazepine) and Phenobarbital (a barbiturate).

36. Plaintiff's immediate supervisor, Project Manager Mark Hartwell, was present at the ER when Plaintiff suffered the second epileptic seizure and was administered medication through an IV drip.

37. On April 16, 2019, at around 3:00 a.m., Plaintiff was discharged from the ER.

38. Later that day, at around 9:00 a.m., Plaintiff called PEC Owner and President Ryan Loew and asked for a few days off work to recover from the seizures and the effects of the medications that he was given in the ER. Mr. Loew told Plaintiff to meet him at the office, which Plaintiff did. During their meeting, Mr. Loew told Plaintiff that it was best to "cut ties right now." Plaintiff questioned whether that decision had anything to do with his being in the hospital. Mr. Loew responded, "You had a seizure!" Plaintiff was shocked and upset. Then Mr. Loew told Plaintiff to take a drug test that day and return to the office the next morning.

39. Later that day, at around 1:39 p.m., Plaintiff took a drug test.

40. On April 17, 2019, at around 9:00 a.m., Plaintiff met with Mr. Loew at the office. Mr. Loew reiterated his decision to "cut ties" and formally fired Plaintiff.

41. On April 30, 2019, Plaintiff asked Human Resources ("HR") Manager Renee Gray for a Separation Notice. On May 2, 2019, Ms. Gray emailed a Separation

Notice to Plaintiff. The Separation Notice stated that Plaintiff was fired because he "failed a drug screen." See Separation Notice attached as **Exhibit C**.

42. Plaintiff was not aware that he had failed the April 16, 2019 drug test, and he immediately asked HR for a copy of the drug test results. HR refused to provide the drug test results, but Plaintiff later obtained the drug test results from the Georgia Department of Labor.

43. The drug test results showed that Plaintiff had tested positive for barbiturates and benzodiazepine—the same drugs that he had received in the ER.

## COUNT ONE
## FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA

44. Plaintiff incorporates Paragraphs 8 through 43 of this Complaint by reference.

45. PEC failed to accommodate Plaintiff in violation of the ADA. See 42 U.S.C. § 12112(b)(5).

46. Plaintiff suffers from epilepsy, which is a "disability" under the ADA because it is a physical impairment that "substantially limits neurological function" and other major life activities. See 29 C.F.R. § 1630.2(j)(3)(iii). During an epileptic seizure, Plaintiff cannot stand, walk, talk coherently, see, hear, etc.

47. Plaintiff's history of epilepsy and treatment for epilepsy constitute a "record of disability" under the ADA.

48. Plaintiff was qualified for his position as a Welder and as a Foreman, the position he held at the time of his termination.

49. Despite Plaintiff's epilepsy, he was able to (and did) perform the essential functions of those positions with or without a reasonable accommodation.

50. On April 16, 2019, Plaintiff requested a reasonable accommodation by asking Mr. Loew for a few days off work to recover from two epileptic seizures and the effects of the medication he had received in the ER.

51. That same day, Mr. Loew denied Plaintiff's request and told Plaintiff that it was best to "cut ties right now" because Plaintiff had a seizure. The next day, on April 17, 2019, Mr. Loew followed through on his decision to "cut ties" by formally firing Plaintiff.

52. PEC's failure to make a reasonable accommodation for Plaintiff's known disability constitutes discrimination under the ADA. See 42 U.S.C. § 12112(b)(5).

53. As the direct and proximate result of PEC's discriminatory conduct, Plaintiff has suffered lost wages and benefits, emotional distress, mental anguish, and other non-pecuniary losses.

## COUNT TWO
## DISCRIMINATORY DISCHARGE BECAUSE OF DISABILITY IN VIOLATION OF THE ADA

54. Plaintiff incorporates Paragraphs 8 through 43 of this Complaint by reference.

55. PEC terminated Plaintiff because of his epilepsy in violation of the ADA. See 42 U.S.C. § 12112.

56. Plaintiff's epilepsy is a "disability" under the ADA because it is a physical impairment that "substantially limits neurological function" and other major life activities. See 29 C.F.R. § 1630.2(j)(3)(iii). During an epileptic seizure, Plaintiff cannot stand, walk, talk coherently, see, hear, etc.

57. PEC fired Plaintiff two days after Plaintiff had suffered an epileptic seizure at work.

58. PEC's alleged reason for firing Plaintiff ("failed drug screen") is pretextual.

59. The April 16, 2019 drug test was a cover-up for PEC's discriminatory termination decision.

60. PEC made the decision to "cut ties" with Plaintiff on the morning of April 16, 2019, before Plaintiff took the drug test.

61. PEC knew that Plaintiff suffered a seizure at work on April 15, 2019 and went to the ER.

62. PEC knew that while Plaintiff was in the ER, Plaintiff was hooked up to an IV drip.

63. PEC knew that Plaintiff was discharged from the ER on April 16, 2019.

64. PEC required Plaintiff to take a drug test the same day that Plaintiff was discharged from the ER.

65. On April 17, 2019, PEC did not inform Plaintiff that he had failed the drug test.

66. PEC first informed Plaintiff that he had failed the drug test on May 2, 2019 when it emailed Plaintiff a Separation Notice.

67. PEC did not provide Plaintiff with a copy of the drug test results.

68. PEC did not give Plaintiff an opportunity to explain the drug test results.

69. PEC did not investigate whether the medications administered to Plaintiff in the ER caused the positive drug test.

70. PEC never spoke to Plaintiff's neurologist.

71. Had PEC spoken to Plaintiff's neurologist, it would have discovered that the IV medications Plaintiff received in the ER caused the positive drug test.

72. As the direct and proximate result of PEC's discriminatory conduct, Plaintiff has suffered lost wages and benefits, emotional distress, mental anguish, and other non-pecuniary losses.

## COUNT THREE
## RETALIATION IN VIOLATION OF THE ADA

73. Plaintiff incorporates Paragraphs 8 through 43 of this Complaint by reference.

74. PEC retaliated against Plaintiff for requesting a reasonable accommodation. See 42 U.S.C. § 12203(a) and (b).

75. On April 16, 2019, Plaintiff engaged in "protected conducted" by requesting a reasonable accommodation in the form of a few days off work to recover from two epileptic seizures and the effects of the medication he had received in the ER.

76. That same day, PEC decided to "cut ties" with Plaintiff, and it followed through with that decision on April 17, 2019.

77. PEC's alleged reason for terminating Plaintiff ("failed drug screen") is pretextual as explained *supra* at ¶¶ 59-71.

78. As the direct and proximate result of PEC's discriminatory conduct, Plaintiff has suffered lost wages and benefits, emotional distress, mental anguish, and other non-pecuniary losses.

## COUNT IV
## DISCRIMINATORY DISCHARGE DUE TO BEING REGARDED AS DISABLED IN VIOLATION OF THE ADA

79. Plaintiff incorporates Paragraphs 8 through 43 of this Complaint by reference.

80. PEC regarded Plaintiff as disabled and fired him on that basis in violation of the ADA. See 42 U.S.C. § 12102(1)(C) and 3(A).

81. PEC fired Plaintiff based on its assumption that Plaintiff's epilepsy rendered Plaintiff too disabled to do his job.

82. On April 15, 2019, Plaintiff had an epileptic seizure at work.

83. On the morning of April 16, 2019, PEC made the decision to "cut ties" with Plaintiff because Plaintiff had a seizure.

84. On April 17, 2019, PEC followed through on that decision by formally firing Plaintiff.

85. As the direct and proximate result of PEC's discriminatory conduct, Plaintiff has suffered lost wages and benefits, emotional distress, mental anguish, and other non-pecuniary losses.

## DEMAND FOR JURY TRIAL

86. Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for relief as follows:

(1) For a trial by jury on all triable issues;

(2) Judgment in Plaintiff's favor on Counts I through IV of this Complaint;

(3) An award to Plaintiff for his out-of-pocket losses, back pay in an amount equal to any wages, bonuses, benefits or other compensation denied or lost as a result of PEC's unlawful discriminatory conduct, plus interest thereon, and front pay in the maximum amount permitted by law;

(4) An award to Plaintiff for compensatory damages for the mental and emotional distress that he has suffered, as well as for other non-pecuniary losses in an amount to be shown at trial;

(5) An award to Plaintiff for his reasonable attorneys' fees and costs; and

(6) For such other and further relief as this honorable Court deems just and proper.

Respectfully submitted this 22nd day of August, 2020.

SMITH LAW, LLC

*/s/ Louise N. Smith*
Louise N. Smith
Georgia Bar No. 131876
louise@smithlaw-llc.com
William J. Smith
Georgia Bar No. 710280
william@smithlaw-llc.com
*Attorneys for Plaintiff*

3611 Braselton Highway
Suite 202
Dacula, GA 30019
T: (678) 889-5191 (main)
F: (844) 828-5615

## **FONT AND POINT CERTIFICATION**

I hereby certify that the within and foregoing pleading was prepared using Times New Roman, 14-point font.

This the 22nd day of August, 2020.

*/s/ Louise N. Smith*
Louise N. Smith
Georgia Bar No. 131876

## **CERTIFICATE OF SERVICE**

I hereby certify that I have caused or will cause service to issue upon Defendants to this Action pursuant to Fed. R. Civ. P. 4.

This the 22nd of August, 2020.

*/s/ Louise N. Smith*
Louise N. Smith
Georgia Bar No. 131876